UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT A GROSS,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 3:20-CV-351 JD

## OPINION AND ORDER

Plaintiff Robert Gross filed a complaint seeking review of the final decision of the Commissioner of Social Security denying his application for social security disability benefits. [DE 1]. The matter is fully briefed and ripe for decision. [DE 19, 20].[1] For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I.  FACTUAL BACKGROUND

On December 12, 2016, Mr. Gross filed for disability insurance benefits and supplemental security income, claiming his disability began December 9, 2014. Mr. Gross alleged disability because of obesity, autoimmune hepatitis, sleep apnea, chronic back pain, diabetes, low testosterone, hypertension, depression, and rheumatoid arthritis. (R. 70–71, 81). His claim was denied initially and upon reconsideration. On April 8, 2019, Mr. Gross participated in a hearing before an ALJ. The ALJ issued an unfavorable decision denying his disability benefits and concluded that Mr. Gross was not disabled under the Social Security Act because he had the residual functional capacity that allowed him to perform work in the economy. (R. 10–19). The ALJ found that Mr. Gross' date last insured was December 31, 2016,

---

[1] Mr. Gross did not file a reply brief.

meaning he must establish disability on or before that date. (R. 10). The Appeals Council denied Mr. Gross' request for review (R. 1–3), after which he filed this appeal. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Mr. Gross seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

After working for several RV manufacturers and eventually as a self-employed part-time handyman, Mr. Gross was unable to continue working due to the combined effects of his multiple medical conditions especially the pain from his back and knees as well as the side effects of taking pain medication. (R. 42–44). He has been diagnosed with obesity (BMI of 55+), dextroscoliosis, diabetes mellitus, cellulitis/Fournier's gangrene of the scrotum, hypertension, autoimmune hepatitis, sleep apnea, low testosterone, hyperlipidemia, chronic rhinitis, osteoarthritis (bilateral knees), carpal tunnel syndrome, and depression. (R. 255, 289).

At the hearing in front of the ALJ, Mr. Gross and a vocational expert ("VE") testified. Mr. Gross testified to being unable to work due to pain in his knees and back. (R. 44). He testified to having carpal tunnel syndrome causing pain, numbness, and weakness in his hands which made it difficult to grab and hold things for extended periods of time. (R. 45–46). His diabetes caused neuropathy in his feet and he described limitations in standing, walking, sitting, balancing, using his hands, and concentrating. (R. 46–47). Mr. Gross requires a walker to stand and walk, and prior to using a walker, he used a cane. (R. 45). Mr. Gross sees a pain management specialist and has had a spine simulator implanted in his spine, but since the leads have moved, it no longer provides him any relief. (R. 48, 51–52).

When testifying to his activities of daily living he stated that his weight exacerbates his other impairments and causes him to get fatigued easily while performing brief self-care tasks. (R. 52). He explained that he becomes exhausted at times simply walking to the bathroom and

uses a shower seat due to fatigue. (*Id.*). He believes his autoimmune hepatitis also contributes to his constant fatigue. (*Id.*). His combined symptoms cause him to have difficulty starting and completing tasks, occasional forgetfulness, and the need for frequent breaks due to pain and fatigue. (R. 56–57). Mr. Gross testified that he has many side effects from various pain medications, including dizziness, increased sensitivity to the sun, and sexual side effects, along with symptoms of depression negatively impacting his ability to focus and concentrate. (R. 54).

On April 21, 2017, Mr. Gross' wife completed an adult third party function report in support of his application for benefits. (R. 185–92). Mrs. Gross reported that Mr. Gross "can't do much" and that he "sits in his chair [and] watches TV or on computer most of the day." (R. 185). If he tries to perform chores in excess of "maybe a load or 2 of laundry . . . maybe up for about 10 min[utes]," his pain level would increase, and he has to return to the chair. (*Id.*). She and their children assist Mr. Gross with "supper, laundry, cleaning" and caring for the dog. (R. 186). He cooks microwave food or sandwiches with assistance from his wife or kids, and he has to sit while preparing those meals. (R. 187). Mr. Gross needs Mrs. Gross' help with his socks and shoes and sometimes underwear; he also needs help washing his legs and back. (R. 186). Mr. Gross performs some cleaning but is only able to do so for about ten minutes once or twice a week. She stated that "it takes him about an hour to clean just the living room" in their mobile home. (R. 187, 41). Mr. Gross helps shop for food, but he uses an electric cart and takes about three hours to do so. (R. 188). Mrs. Gross reported that Mr. Gross plays games with his children approximately twice a week. However, he did not like to go anywhere or socialize, and if he did leave the house, he "just sits and doesn't participate hardly." (R. 189). Mrs. Gross reported he can walk for about five minutes at a time before needing a rest period, and he can barely walk to

the bedroom without pain. (R. 190). When going out anywhere, he requires a cane or wheelchair. (R. 191).

The ALJ found Mr. Gross had the RFC to perform sedentary work with the following exceptions:

> [He can] frequently handle and finger with both hands. He can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch, and crawl; and he can occasionally work in extreme cold and occasionally in humidity and wetness. He can never climb ladders, ropes, or scaffolds, never work at unprotected heights, never around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of his work-related duties. He can never work on wet, slippery surfaces, or on dangerous or uneven terrain. Every 60 minutes, he must be allowed to shift positions or alternate between sitting and standing for one to two minutes at a time while remaining on task. He must use a medically necessary cane at all times while walking. He is limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas.

(R. 15–17). Based on the testimony of the VE and the assigned RFC, the ALJ found Mr. Gross capable of working in the national economy.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas*, 732 F.3d at 707. This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

> 2. Whether the claimant has a medically severe impairment;
>
> 3. Whether the claimant's impairment meets or equals one listed in the regulations;
>
> 4. Whether the claimant can still perform relevant past work; and
>
> 5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Mr. Gross asserts two arguments in support of remand: 1) the ALJ failed to adequately evaluate his RFC determination or support it with substantial evidence; and 2) the vocational findings are founded upon legal error and are not supported by substantial evidence. Mr. Gross included several sub-arguments supporting his allegations that the ALJ erred in formulating his RFC. The Court only addresses some of those supporting arguments, as the Court agrees the ALJ

did not adequately evaluate his RFC and failed to support it with substantial evidence therefore requiring remand. The Court need not address the remaining arguments, which can be addressed on remand.

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017) (superseding SSR 96-7p).[2] Importantly, the "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors: (i) the individual's daily activities; (ii) location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication; (v) treatment, other than medication, for relief of pain or other symptoms; (vi) other measures taken to relieve pain or other symptoms; (vii) other factors concerning functional limitations due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *7–8. However, an individual's statements about intensity, persistence, and limiting effects of the symptoms may not be disregarded solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual. SSR 16-3p, 2017 WL 5180304, at *5.

---

[2] The Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *2. Instead, the ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*. Under either SSR version the outcome in this case would be the same.

Because the ALJ is in the best position to determine a witness' truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p, 2017 WL 5180304 at *10; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) ("[A]n ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record."). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

Here, the ALJ's subjective symptom analysis was flawed in multiple respects. The ALJ's reason for not giving full weight to Mr. Gross' subjective symptoms and their limitations was that the statements concerning intensity, persistence, and limiting effects of his symptoms were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 16). The Seventh Circuit has noted that it is a recurrent error made by ALJ's to discount pain testimony that cannot be attributed to "objective" injuries or illnesses. *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (collecting cases); *see also* SSR 16-3p, 2017 WL 5180304 at *10 ("In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that" the individual's statements about the his or her symptoms "'are (or are not) supported or consistent.'"). Not only is the ALJ's explanation insufficient here, but it is not supported by substantial evidence. The record here contains years of medical evidence documenting Mr. Gross' pain, pain treatment, and causes for

the pain, supporting Mr. Gross' testimony. It also includes other evidence supporting his limitations due to his pain, obesity, and fatigue. Because the ALJ disregarded Mr. Gross' subjective symptom testimony for being inconsistent with the record and failed to provide specific reason supporting such a finding, which is not supported by substantial evidence, remand is required.

The ALJ did not properly evaluate Mr. Gross' testimony and evidence regarding Mr. Gross' activities of daily living nor does the evidence presented regarding his daily activities sufficiently support his RFC. Mr. Gross testified in detail to the pain that he experiences during activities of daily living, including dressing, cooking, standing, and walking. Additionally, Mrs. Gross completed a third-party function report, attesting to Mr. Gross' abilities regarding daily activities, which the ALJ relies on in part and ignores in part. While a claimant's activities of daily living are an appropriate factor for an ALJ to consider, the Seventh Circuit has "repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full time." *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (reasoning that the pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment often differ dramatically between home and office or factory or other place of paid work). When considering the daily activities in which a claimant engages to determine their ability to perform work in the national economy, the ALJ may not consider daily activities without acknowledging the limitations inherent in their execution. *See, e.g.*, *Childress v. Colvin*, 845 F.3d 789, 792–93 (7th Cir. 2017). "[F]ailing to recognize the difference between performing activities of daily living with flexibility (and often with help from family and friends) and performing to the standards required by an employer 'is a recurrent, and

9

deplorable, feature of opinions by administrative law judges in social security disability cases.'" (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). Thus, when an ALJ considers a claimant's activities, the ALJ should consider not only what the claimant does, but also how the claimant goes about performing those activities and what effect the activities have on the claimant. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008).

The ALJ assigned some weight to Mrs. Gross' report because she is not a medical source and her statements "concerning the intensity, persistence, or limiting effects of the claimant's symptoms are not entirely consistent with the evidence discussed in this decision, such as the activities of daily living and the findings from medical exams, tests, and imaging." (R. 17). The ALJ relied on some of Mrs. Gross' statements and concluded that Mr. Gross "could do multiple activities of daily living, including driving ("once in a while"), shopping in stores for food (uses a motorized buggy), preparing simple meals (with help and breaks), laundry, and caring for children while she is at work." (R. 16, 185–91).

However, the ALJ ignores several limitations to Mr. Gross' daily activities other than the brief limitations noted in the parentheticals after each activity. While the ALJ noted that Mr. Gross helped grocery shop and used an electric cart, he did not mention that it took him about three hours to do so. (R. 188). The ALJ stated that Mr. Gross cared for his children, however, he omitted further details from Mrs. Gross' report, which indicates that she mostly works during the day and the children are in school all day and, in contrast to the ALJ's decision, the children help him because they are old enough. (R. 186). Additionally, Mr. Gross testified to only being able to sit for "about a half hour or so" before he has to stand up and adjust, or else "it's excruciating." (R. 45). However, without explanation, the ALJ assigned an RFC requiring a less restrictive limitation. Mr. Gross' RFC requires him to be able to shift positions only every 60

minutes. The ALJ notes that Mr. Gross can only sit for 30 minutes (R. 15), however, does not provide a logical bridge from this evidence to the conclusion that he can sit for 60 minutes before being able to shift positions. Nor does the ALJ cite to any specific evidence of record that contradicts Mr. Gross' testimony or supports a finding for only a 60-minute limitation.

Mr. Gross testified to having difficulty standing and walking prior to his date last insured and described it as "very excruciating" to walk distances. (R. 45). He also testified that it has progressed to where he needs a walker to both stand and walk after his date last insured. (*Id.*). After indicating skepticism of Mr. Gross' need for a cane, the ALJ included the need for a cane in the RFC, but only for walking, not standing. (R. 15). The ALJ discussed that Mrs. Gross reported that Mr. Gross "uses a cane and wheelchair 'whenever going out anywhere' but indicated that they had not been prescribed by a doctor." (R. 16). The ALJ went on further and stated "however, the medical records document little to no cane or other assistive device use at medical appointments." (*Id.*). The ALJ also references Mr. Gross' testimony that he only used a cane "at times" prior to the date last insured and it was not until after Mr. Gross' date last insured did he use a walker to stand and walk. (R. 15, 16). However, the ALJ ignores Mr. Gross' testimony that he used a cane to stand, walk, and balance during the relevant period and he had a back brace at this time. (R. 50). The ALJ did not discuss Mr. Gross' need to use the cane for standing or balance. The Seventh Circuit has previously found it "absurd" when an ALJ finds it suspicious that a plaintiff uses a cane when no physician had prescribed a cane because "[a] cane does not require a prescription." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010). The ALJ also ignores significant post-date last insured evidence regarding Mr. Gross' use of an assistive device. An ALJ must consider evidence even if it post-dates the date last insured. *Id.* at 925 (the ALJ must "consider *all* relevant evidence, including the

11

evidence regarding the plaintiff's condition at present"); *see also Wilder v. Apfel*, 153 F.3d 799, 802 (7th Cir. 1998) (finding that medical opinions submitted after the date last insured were relevant); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225–26 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."). In June 2018, treatment notes from his pain management doctor indicate that the doctor intended to order a walker for Mr. Gross, and other pain management treatment notes from late 2018 mention Mr. Gross using a cane. (R. 411, 449). Treatment notes from December 2018 indicate he was prescribed an electric lift chair which suggests he had difficulty rising from a seated position. (R. 482). While the ALJ need not address every piece of evidence in the record, the ALJ must not ignore a line of evidence that contradicts his findings. *Zurawski*, 245 F.3d at 888 ("[A]n ALJ may not ignore an entire line of evidence that is contrary to her findings, rather she must articulate at some minimal level her analysis of the evidence to permit an informed review.") (internal quotations omitted). Here, the ALJ failed to adequately discuss the record evidence regarding Mr. Gross' use of an assistive device, which is not harmless, as the VE testified that there are no jobs at the sedentary level with a sit/stand option if a person needs one hand to use a cane when standing. (R. 62–64).

As explained above, Mrs. Gross reported that Mr. Gross "can't do much" and that he "sits in his chair and watches TV or on computer most of the day." (R. 185). If he tries to perform chores in excess of "maybe a load or 2 of laundry . . . maybe up for about 10 min[utes]," his pain level would increase, and he would have to return to the chair. (*Id.*). Mrs. Gross reported he can walk for about five minutes at a time before needing a rest period, and he can barely walk to the bedroom without pain. (R. 190). She and their children assist Mr. Gross with "supper, laundry, cleaning" and caring for the dog. (R. 186). He cooks microwave food or sandwiches with

12

assistance from his wife or kids, and he has to sit while preparing those meals. (R. 187). The ALJ did not discuss Mr. Gross' need of Mrs. Gross to help him with his socks and shoes and sometimes underwear, nor did he discuss that Mr. Gross also needs help washing his legs and back. (R. 186). Mr. Gross performed some cleaning but is only able to do so for about ten minutes once or twice a week. She stated that "it takes him about an hour to clean just the living room" of their mobile home. (R. 187). The ALJ ignored these limitations in Mr. Gross' daily activities in his decision. The ALJ cites treatment notes in the record which state that Mr. Gross was able to do basic and instrumental daily activity, such as bathing, dressing, shopping, laundry, and light housekeeping. (R. 16, 338, 344, 364, 368). However, the ALJ does not discuss that in those same records he cites, the pain level that Mr. Gross reports to be experiencing is described as "disabling; unable to perform ADL" or activities of daily living. Further, the ALJ does not explain how the basic and instrumental activities listed in his treatment notes, or any of the other very limited daily activities Mr. and Mrs. Gross attest to him doing with many limitations, translate to the ability to work full time. The ALJ failed to create the logical bridge of how Mr. Gross' testimony and Mrs. Gross' third party function report supports his ability to maintain full-time employment, especially when Mr. Gross has not worked full-time since 2008. (R. 43, 160).

Throughout the summary of the medical evidence, the ALJ notes many instances of Mr. Gross presenting to doctors with complaints of lower back and knee pain, yet the ALJ never explains why this medical evidence is inconsistent with Mr. Gross' testimony regarding his pain. (R. 16). Another factor an ALJ must consider in evaluating the severity of claimants' symptoms and limitations is the "type, dosage, effectiveness, and side effects of any medication [the claimants] take or have taken to alleviate [their] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv). Here, the ALJ acknowledged that Mr. Gross took multiple medications

and received injections in his back but did not acknowledge the strength of the medications prescribed to Mr. Gross, such as oxycodone, Percocet and Flexeril or that he had received a spinal cord stimulator implanted (after last date insured), which are consistent with severe pain. (R. 48, 51, 308, 357, 448). *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (claimant unlikely to successfully fool physicians into prescribing powerful medications only to bolster claimant's application for disability benefits). The ALJ referenced Mr. Gross' muscle strength in his lower extremities as being intact. (R. 14, 16). The ALJ also notes that the pain management treatment records generally provide that Mr. Gross had an antalgic gait without specifying the degree of severity, with one noting it was only mildly antalgic. (R. 16). However, the ALJ does not explain why muscle strength or a mild antalgic gait correlates to Mr. Gross' pain not being as persistent or intense as he testified. Lastly, the ALJ lists multiple pieces of medical evidence regarding Mr. Gross' objective medical conditions and imaging that he notes as "generally largely negative but revealed fairly consistent back tenderness." (*Id.*) Yet, the ALJ fails to provide any explanation how this medical evidence is inconsistent with Mr. Gross' subjective symptom testimony. The ALJ did not provide specific reasons, supported by substantial evidence, why the record is inconsistent with Mr. Gross' testimony and therefore the Court cannot assess how the ALJ evaluated the symptoms and remand is required. *Pepper*, 712 F.3d at 367; *Myles*, 582 F.3d at 676.

Mr. Gross additionally argues that the ALJ was required to analyze how his obesity combined with his other medical determinable impairments impacted his ability to work on a regular and continuing basis. SSR 02-1p (rescinded by SSR 19-2p effective May 20, 2019); *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (noting that "the ALJ needed to consider the *aggregate* effect of this entire

constellation of ailments"). The regulations explained that obesity often complicates symptoms and limitations associated with diabetes mellitus; hypertension; heart disease; peripheral vascular disease; dyslipidemia; osteoarthritis; sleep apnea; and depression. SSR 02-1p. The regulations further caution that the "effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea." *Id.* In his decision, the ALJ included the boilerplate language of SSR 02-1p but did not include any analysis specific to Mr. Gross' situation. He stated: "Regarding obesity, SSR 02-lp provides that although there is no listing for obesity, it may be a factor in both 'meets' and 'equals' determinations – when evaluating the claimant's impairments under the listings, I considered the effects of the claimant's obesity." (R. 15). The ALJ later referenced Mr. Gross' obesity once more, stating Mr. Gross' "body mass index (BMI) has generally been at level III in the mid-50s, which is classified as extreme obesity – treatment notes from September 2016 show that the claimant weighed 453 pounds and had a BMI of about 55," with no further discussion. (R. 16). However, this is insufficient. *See Spicher v. Colvin*, 2015 WL 4714293, at *6 (N.D. Ind. Aug. 7, 2015) ("The ALJ is required to do more than acknowledge the [p]laintiff's obesity. She must also explain how that factored into her analysis."). This reference to Mr. Gross' extreme obesity was included in a paragraph starting with "[p]hysical exams were generally largely negative" however, provides no further specificity as to how Mr. Gross' obesity, combined with other impairments, impacts him and his ability to work.

Mr. Gross testified that his obesity makes it a chore just to get up and go to the bathroom. (R. 52). When he showers, he brings a stool in the shower to sit. (*Id.*). Although he has tried to lose weight, his chronic pain and depression has interfered with his ability to be successful. (R. 520, 539, 543). Mr. Gross suffers from significant mobility issues, which can only be aggravated

15

by his extreme obesity, which require use of a cane, a back brace, and eventually prescribed an electric lift chair. (R. 50, 323, 482). Also, the ALJ fails to discuss how Mr. Gross, with a BMI of about 55 and chronic back and knee pain, is able to occasionally stoop, kneel, crouch and crawl. *Goins*, 764 F.3d at 682 (expressing doubt that someone with a BMI near 40 could "even occasionally" crawl, stoop, and crouch). The ALJ provides no logical bridge from Mr. Gross' extreme obesity to the conclusion that he can stoop, kneel, crouch and crawl occasionally. Further, Dr. Weston Carter, Mr. Gross' treating physician, opined that he believed he has a "significant disability secondary to [his chronic back pain]. Unfortunately[,] his weight and poor exercize [sic] tolerance are contributing to his morbidity." (R. 545). Mr. Gross' obesity clearly has a profound impact on his ability to perform work activities and presents a significant issue that the ALJ should have carefully explored in greater detail in assessing his RFC. SSR 02-01p; *see also Summers v. Berryhill*, 864 F.3d 523, 527–28 (7th Cir. 2017) (where a claimant's BMI was between 49 and 54, the ALJ appropriately recognized that the "extreme level of [the claimant's] obesity alone would likely result in decreased stamina that would make work at [the medium] level of exertion a challenge") (internal quotations omitted); *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40"). This error was not harmless, as the VE testified that, while difficult to quantify, an extremely obese person could face vocational problems in sedentary jobs because they could not have the correct equipment for the proper positioning or seating necessary to perform the job. (R. 67).

Overall, the ALJ's assessment of Mr. Gross' subjective symptoms, assistive device, extreme obesity, and activities of daily living is not supported by substantial evidence and requires remand. *See Zurawski*, 245 F.3d at 887 (remanding where the ALJ failed to "explain[ ]

the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016). Remand is required for proper consideration and explanation of Mr. Gross' subjective symptoms, assistive device, extreme obesity, and activities of daily living.

## V.  CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: July 7, 2021

/s/ JON E. DEGUILIO  
Chief Judge  
United States District Court